IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF KANSAS

EDWARD SHAWN KISOR,               )
                                 )
                Plaintiff,        )
                                 )
        v.                       )          Case No. 10-1045-WEB
                                 )
ADVANTAGE 2000 CONSULTANTS,      )
INC.,                            )
                                 )
_____Defendant._____)

MEMORANDUM AND ORDER

Defendant Advantage 2000 Consultants, Inc., (hereafter A2K) filed a Motion for

Judgment on the Pleadings (Doc. 34) pursuant to Fed.R.Civ.P. 12(c).  Plaintiff Kisor filed a

response, in which he requests the court convert the Motion for Judgment on the Pleadings to a

Motion for Summary Judgment (Doc. 45), pursuant to Fed.R.Civ.P. 56(d).  Following the filing

of A2K's reply, Kisor filed a Motion to Strike (Doc. 51), seeking to exclude a number of

arguments and exhibits from A2K's reply.

I.  Facts

Kisor included a number of facts in his motion / response related to the state law claims

based on violations of the Kansas Consumer Protection Act (KCPA) and the Kansas Credit

Services Organization Act (KCSOA).  As discussed in detail below, since the court determines

that ERISA preempts the state law claims, many of the facts are not included, since the court

does not engage in a substantive analysis of the state law claims.

For the purposes of summary judgment, the following facts are uncontroverted, deemed

admitted, or, where disputed, viewed in the light most favorable to the plaintiff.

1

1.  In 2002, A2K and Life Insurance Company of North America ("LINA"), a CIGNA-affiliated company, entered into a contract wherein A2K agreed to provide Social Security representative services to people insured by CIGNA Long Term Disability ("LTD") insurance policies.  (The "Contract").  (Pl. Exh. 1, Stipulations).

2.  The contract permits any CIGNA-affiliated company to request services of A2K.  (Pl. Exh. 1, Stipulations).

3.  The contract states that A2K's "status shall be that of an independent contractor and not that of a servant, agent, or employee of [CIGNA]."  (Pl. Exh. 1, Stipulations).

4.  The contract was amended in 2004.  Under the amendment, A2K agreed to provide "Vendor Coordinated Overpayment Reduction (COR) Services" to CIGNA in addition to Social Security representation services for CIGNA insureds.  (Pl. Exh. 1, Stipulations).

5.  This COR services is described as follows:

> [A2K] will provide quality assistance in arranging for the re-payment of any incurred overpayment for Company's [LTD] claimants who may be eligible for Social Security Disability Income (SSDI) Benefits. [A2K] will educate Company's LTD claimants about the overpayment recovery process, arrange for an electronic repayment transaction, monitor SSDI benefits awards, notify Company of any such benefits received by the claimant, inform the claimant of any overpayment to be repaid to Company, and execute the electronic transaction to refund the overpayment from the claimant to Company.

 (Pl. Exh. 1, Stipulations).

6.  CIGNA pays A2K a flat fee for its social security representation services, and a contingency fee equal to an undisclosed percentage of the actual dollar amount repaid by A2K's Social Security clients to CIGNA as a result of A2K's COR services.  A2K and CIGNA agreed that A2K would not disclose to its Social Security clients any information about how A2K is paid.  (Pl. Exh. 1, Stipulations).

7. The contract was amended again in 2005. Under the amendment, A2K continued to provide COR Services to CIGNA and agreed not to disclose to the Social Security clients any information about how A2K is paid. (Pl. Exh. 1, Stipulations).

8. A2K's Benefit Coordinator bonus program ("Bonus Program") pays commissions to A2 Benefit Coordinators based upon the recovery of money from A2K's Social Security clients for A2K's LTD clients. (Pl. Exh. 1, Stipulations).

9. The Bonus Program pays a standard commission for each recovery secured from an A2K Social Security client for an A2K LTD client. (Pl. Exh. 1, Stipulations).

10. Under the Bonus Program, A2K pays additional commissions when the company hits specific weekly and quarterly benchmarks in CIGNA recoveries. Another commission is paid to Benefit Coordinator when A2K ends the year with a 2% increase in overall effectiveness for CIGNA recoveries. (Pl. Exh. 1, Stipulations).

11. A2K's Bonus Program pays an additional year-end bonus to each Benefit Coordinator for each year in which A2K exceeds $20,000,000.00 in overall recoveries from its Social Security clients for its LTD claims. (Pl. Exh. 1, Stipulations).

12. A2K contracts with other LTD plans and carriers, not only CIGNA. A2K markets itself as a company that collects overpayments after an award of SSDI benefits and assists LTD beneficiaries in applying for SSDI benefits. (Pl. Exh. 16).

13. Kisor was employed by Exide Technologies from 2001 to February 2007. (2nd Am. Comp. ¶ 27).

14. Exide Technologies is a party to an insurance contract issued by LINA, Policy No. LK960507. (2nd Am. Comp. ¶ 18).

15.  LINA is a subsidiary of CIGNA, and is staffed by CIGNA employees. (2nd Am. Comp. ¶ 19 and 20).

16.  Kisor was injured at work on August 21, 2006, received surgery on both of his knees, and is unable to work as a heating and air conditioning technician because he is disabled.  (2nd Am. Comp. ¶ 30 and 31).

17.  CIGNA approved Plaintiff's short term disability claim and paid benefits on that claim from August 26, 2006 to February 25, 2007.  (2nd Am. Comp. ¶ 31).

18.  Prior to approving Kisor's LTD claim, it referred him to A2K for social security representation.  (2nd Am. Comp. ¶ 32).

19.  On February 1, 2007, a CIGNA employee sent Kisor a letter acknowledging his application for long term disability benefits.  CIGNA estimated the social security benefits Kisor would receive, and adjusted LTD benefits accordingly.  CIGNA agreed not to deduct any estimated social security benefits if Kisor would sign and return a reimbursement agreement. Kisor would be required to apply for social security disability benefits.  (2nd Am. Comp. ¶ 33 and 34).

20.  Kisor initially did not cooperate with A2K.  (2nd Am. Comp. ¶ 46).

21.  A CIGNA employee told Kisor that his LTD claim would be delayed or denied until he provided those forms to A2K.  Kisor then signed the forms.  (2nd Am. Comp. ¶ 47).

22.  A letter dated February 15, 2007 from A2K to Kisor states that CIGNA pays A2K's fee for Social Security representation, with no cost to Kisor.  The letter describes A2K's collection practice as a "service" that it provides to people like Kisor, "helping them resolve any overpayment that may result from a Social Security Disability Insurance award."  (Pl. Exh. 10,

Letter dated February 15, 2007).

23. Kisor signed a Social Security Appointment of Representative form, SSA-1696, in November 2007. The form was also signed by Paul Madison, an attorney employed by A2K. (Pl. Exh. 9).

24. On November 21, 2007, Madison sent a letter to Kisor, advising Kisor about the possible LTD overpayment that he will have to work out following a successful Social Security claim. (Pl. Exh. 13, Letter dated November 21, 2007).

25. Kisor's short term disability claim was approved by CIGNA for August 26, 2006 through February 25, 2007. (2nd Am. Comp. ¶ 31).

26. Kisor made a claim for social security benefits. (2nd. Am. Comp. ¶ 49 and 51).

27. A2K represented and assisted Kisor with his Social Security claim. (2nd. Am. Comp. ¶ 47, 48, 52).

28. After obtaining a favorable Social Security award. Kisor was contacted by A2K to discuss his LTD overpayment obligation. (Pl. Ex. 14, Hearing Decision Checklist).

29. Kisor received a letter from A2K, dated February 11, 2009, stating that an overpayment of $41,544.00 was due to CIGNA. (2nd Am. Comp. ¶ 53).

30. Kisor also received several telephone calls from A2K discussing the overpayment of LTD benefits, and Kisor's obligation to repay the benefits. (Pl. Exh. 15, Affidavit of Kisor).

31. Kisor's LTD benefits were cutoff when his Social Security claim was approved. (Pl. Exh. 21).

32. Kisor had several delinquent accounts with creditors, including hospitals and medical providers. Kisor used his Social Security back award to pay down debts that he owed. (Pl. Exh.

15, Kisor Affidavit).

II. <u>Standard</u>

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56; <u>Thomas v. Metropolitan Life Ins. Co.</u>, 631 F.3d 1153, 1160 (10th Cir. 2011). A fact is "material" if under the substantive law it is essential to the proper disposition of the claim. <u>Wright ex rel. Trust Co. of Kansas v. Abbott Laboratories, Inc.</u>, 259 F.3d 1226, 1231-1232 (10th Cir. 2001), quoting <u>Adler v. Wal-Mart Stores</u>, 144 F.3d 664, 670 (10th Cir. 1998). "An issue is genuine if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." <u>Adler</u>, 144 F.3d at 670. The court must "view the evidence and draw all reasonable inferences therefrom in the light most favorable to the party opposing summary judgement. <u>Atl. Richfield Co. v. Farm Credit Bank of Wichita</u>, 226 F.3d 1138, 1148 (10th Cir. 2000). The burden of showing that no genuine issue of material fact exists is borne by the moving party. <u>E.E.O.C. v. Horizon / MS Healthcare Corp.</u>, 220 F.3d 1184, 1190 (10th Cir. 2000). Once the moving party meets the burden, the nonmoving party must demonstrate a genuine issue for trial on a material matter. <u>Concrete Works, Inc. v. City & County of Denver</u>, 36 F.3d 1513, 1517 (10th Cir. 1994).

III. <u>Motions</u>

Kisor filed state law claims related to violations of the Kansas Consumer Protection Act based on deceptive acts, violation of the Kansas Consumer Protection Act based on unconscionable practice, and Kansas Credit Services Organization Act violation. A2K filed a Motion for Judgment on the Pleadings, arguing that the claims set forth by Kisor are preempted

by ERISA.  A2K argues that they are a fiduciary, and A2K administered the LTD benefit plan.  Even if the court finds that A2K was not a fiduciary, A2K argues, the claims are still preempted because the claims relate to the plan.

Kisor filed a response, requesting the motion be converted to a motion for summary judgment.  Kisor argues that the claims are not related to ERISA, as the claims are based on the relationship between A2K and Kisor, not on the contract between A2K and CIGNA.  Kisor also argues that A2K is a Social Security firm, hired to assist in obtaining disability benefits, and A2K does not administer an ERISA plan.  Kisor claims that the general laws under which this suit was filed are not related to the employer, the plan, or the plan fiduciary.

A2K filed a reply, in which they argue that recovery of overpaid benefits is a discretionary function of the plan fiduciary, and the ERISA plan stood to benefit from recoupment of overpaid benefits.  A2K further argues that A2K's conduct is based on the contract between CIGNA and A2K, and since CIGNA is the plan fiduciary, and A2K is the third party employed by CIGNA, this relationship makes A2K a fiduciary.

Kisor filed a Motion to Strike (Doc. 51), requesting the court strike A2K's new arguments and exhibits presented in A2K's reply.  Specifically, Kisor requests that Exhibit 2, a copy of an ERISA plan, be stricken, and that the court not consider A2K's new arguments regarding ERISA plan reimbursement provisions, dual roles of fiduciaries, fiduciary discretion, the duty of the fiduciary to recover overpaid benefits, ERISA's impact on the opportunity to recover overpaid benefits, and liability of third-party service providers.

A2K responded, stating that the matters in the reply brief were either first raised in the motion for judgment on the pleadings, or were in response to the arguments raised by Kisor in

the response / motion for summary judgment.

IV.  Discussion

a.  Motion to Strike

Kisor argues that new arguments raised in the reply and the accompany exhibits filed by A2K should be stricken.  "The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed.R.Civ.P. 12(f).  A2K filed a Motion for Judgment on the Pleadings, pursuant to Fed.R.Civ.P. 12(c).  Kisor submitted a response, requesting the court convert the motion into a motion for summary judgment.  This request is consistent with Rule 12(d), which states that when "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.  All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."  Fed.R.Civ.P. 12(d).  Kisor submitted numerous facts and documents outside the pleading in his response.  The court is required to give the parties a reasonable opportunity to present information related to the motion for summary judgment.  Whether A2K's response is labeled a response or a reply, A2K was responding to the additional facts and documents presented by Kisor.  Kisor's motion to strike the additional arguments and documents presented by A2K is denied.

Kisor also requests the court strike A2K's Exhibit 2, a copy of an ERISA plan, arguing that it is not the applicable insurance contract or ERISA plan at issue.  Kisor also argues that the terms of any alleged ERISA plan are irrelevant to determine if ERISA preempts state law claims.  The exhibit submitted by A2K is a Schedule of Benefits, effective January 1, 2005.  A2K states that the plan submitted was provided by Kisor.  A2K admits that the terms of Kisor's ERISA

plan may or may not be similar. However, A2K argues, the plan was submitted to inform the court of their understanding of the plan. Furthermore, A2K certified, under Fed.R.Civ.P. 56(d), that additional discovery was needed to establish foundation for the exhibits included in the response. The court notes that Kisor also presented the court with a number of documents to overcome A2K's Motion for Judgment on the Pleadings. Kisor also presented an affidavit, under Fed.R.Civ.P. 56(d), certifying that the exhibits presented did not have sufficient foundation, and that time for discovery was necessary to establish foundation.

"If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed.R.Civ.P. 56(d). Neither party is requesting the court defer ruling on the motions, or allow additional time for discovery. The parties are a little unclear as to what they are asking the court to do. Obviously, Kisor wants the court to consider his exhibits, submitted without the necessary foundation, to defeat A2K's motion. On the other hand, Kisor does not want the court to consider A2K's exhibits, submitted without the proper foundation, filed in reply to Kisor's response.

As stated in the analysis, preemption may rest on whether the state law relates to ERISA. The Supreme Court has found that ERISA provides for equitable remedies to enforce plan terms. Sereboff v. Mid Atlantic Medical Services, Inc., 547 U.S. 356, 362-63, 126 S.Ct. 1869, (2006). A2K's exhibit 2, a copy of the plan that was provided by Kisor, contains the following language:

> Recovery of Overpayment
> We have the right to recover any benefits we have overpaid. We may use

any or all of the following to recover an overpayment;
1. Request a lump sum payment of the overpaid amount;
2. Reduce any amounts payable under this policy; and / or
3. Take any appropriate collection activity available to us.

"If the court relies on new material or argument in a reply brief, it may not forbid the nonmovant from responding to these new materials."  Beaird v. Seagate Tech., Inc., 145 F.3d 1159, 1165 (10th Cir. 1998), Fed.R.Civ.P. 56(c).  This rule applies to new material submitted in support of a legal argument that has already been made.  Doebele v. Sprint / United Mgmt. Co., 342 F.3d 1117, 1139 n. 13 (10th Cir. 2003).   Kisor chose not to respond to the materials submitted in A2K's reply brief.  Specifically, Kisor chose not to supply the court with the plan that was in effect at the time that Kisor was injured at work.  It is important to note that Kisor presented significant material outside of the pleadings in his response, arguing that the motion should be converted to a motion for summary judgment.  A2K was provided the opportunity to respond to the new material.  Instead of replying to A2K's arguments and additional documents, or submitting the ERISA plan, Kisor requests this court strike an exhibit submitted by A2K, although it was initially supplied to A2K by Kisor.  The question before the court is whether ERISA preempts the state law claims.  Discussion of this issue may involve the plan in effect at the time Kisor was injured.  Kisor's motion to strike A2K's exhibits and arguments is denied.

b.  ERISA

ERISA expressly preempts specific state laws as they relate to an employee benefit plan. The express conflict preemption provision states, "ERISA shall supersede any and all State laws insofar as they may now or hereafter relate to any ERISA plan."  29 U.S.C. § 1144(a).   ERISA preemption also applies when the state law cause of action "provides remedies beyond those contained in ERISA itself."  Kidneigh v. UNUM Life Ins. Co. of America, 345 F.3d 1182, 1185

(10th Cir. 2003).   The Supreme Court has consistently held that the preemptive scope is broad. Cal. Div. of Labor Standards Enforcement v. Dillingham Constr., N.A., Inc., 519 U.S. 316, 324, 117 S.Ct. 832, 136, L.Ed.2d 791 (1997).  The Tenth Circuit has enforced this broad reading. Settles v. Golden Rule Ins. Co., 927 F.2d 505, 509 (10th Cir. 1991).

The Supreme Court has set forth a two-part inquiry to determine whether a state law is preempted under the "relate to" provision.  See California Div. of Labor Standards Enforcement v. Dillingham Const., N.A., Inc., 519 U.S. at 324.  A state law relates to an ERISA plan within the meaning of § 1144(a) if it (1) has a connection with a plan, or (2) expressly refers to a plan. Id.  Because the terms "relate to" and "connection with" may be infinite, the Supreme Court has directed that the court look to the objectives of ERISA as a guide to the scope of the state law that will survive preemption, and to the effect of the state law on ERISA plans.  New York State Conf. Of Blue Cross and Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645, 656, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995).

Neither one of the state laws at issue in this case directly acts upon ERISA plans, nor is the existence of ERISA plans essential to the law's operation.  See California Div. of Labor Standards Enforcement, 519 U.S. at 325.  Therefore the court must conduct the "relate to" analysis.

The Tenth Circuit has recognized four categories of state laws that "relate to" a benefit plan and are preempted by ERISA:

> (1) laws regulating the type of benefits or terms of ERISA plans;
> (2) laws creating reporting, disclosure, funding or vesting requirements for such plans;
> (3) laws providing rules for calculating the amount of benefits to be paid under such plans; and
> (4) law and common-law rules providing remedies for misconduct

growing out of the administration of such plans.

Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co., 170 F.3d 985, 990 (10th Cir. 1999). However, if a state law claim has only a "tenuous, remote, or peripheral connection" with the plan, as is true of most laws of general applicability, it is not preempted. Felix v. Lucent Techs, Inc., 387 F.3d 1146, 1154 (10th Cir. 2004). The state law claim is not preempted if it does not affect the structure, the administration, or the type of benefits provided by an ERISA plan. Airparts Co. Inc. v. Custom Benefit Servs. of Austin, 28 F.3d 1062, 1065 (10th Cir. 1994). Claims that do not affect the "relations among the principal ERISA entities, the employer, the plan, the plan fiduciaries and the beneficiaries" are not preempted. Woodworker's Supply Inc., 170 F.3d at 990, quoting Hospice of Metro Denver, Inc. v. Group Health Ins. of Okla. Inc., 944 F.2d 752, 756 (10th Cir. 1991). Furthermore, claims affecting the "relations between one or more of these plan entities and an outside party similarly escape preemption." Id., quoting Airparts Co., 28 F.3d at 1065. ERISA preemption is triggered when there is an effect on the primary administrative functions of benefit plans. Monarch Cement Co. v. Lone Star Industries, Inc., 982 F.2d 1448, 1452 (10th Cir. 1992).

If a state law impacts the administration of employee benefits, then it is within ERISA preemption. Plan administration includes "determining the eligibility of claimants, calculating benefit levels, making disbursements, monitoring the availability of funds for benefit payments, and keeping appropriate records in order to comply with applicable reporting requirements." Fort Halifax Packing Co. V. Coyne, 482 U.S. 1, 9, 107 S.Ct. 221, 96 L.Ed.2d 1 (1987).

A2K argues that the claims in the case at hand relate to the ERISA claims, as Kisor, an employee, and a beneficiary of the plan, is suing A2K, acting in its role as plan fiduciary. To

qualify as a fiduciary with respect to an ERISA plan, the person (or company) must (i) exercise

discretionary authority or discretionary control respecting management of such plan or exercise

any authority or control respecting management or disposition of its assets, (ii) render investment

advice for a fee or other compensation, directly or indirectly, with respect to any moneys or other

property of such plan, or has any authority or responsibility to do so, or (iii) have any

discretionary authority or discretionary responsibility in the administration of such plan.  29

U.S.C. § 1002(21)(A).  Although A2K argues they are a fiduciary, this statement is not

supported by case law.  Fiduciaries that employ a third-party to perform only "ministerial" tasks

do not give rise to fiduciary liability.  See 29 CRF § 2509.75-8; Six Clinics Holding Corp., II v.

Cafcomp Sys., Inc., 119 F.3d 393, 402 (6th Cir. 1997); James Lockhart, When Is Third-Party

Administrator or Other Person or Entity Providing Administrative or Investment Services to

ERISA Plan Fiduciary Under § 3(21)(a)(i) or (iii) or ERISA?, 175 A.L.R. Fed. 129, at § 5

(2002). A2K is a third-party service provider with discretion, control, or authority regarding the

plan, and without the ability to act as a manager, administrator or financial advisor.

    Although the court finds A2K is not a fiduciary, the conduct of A2K may still relate to

the ERISA plan.  In Monarch Cement Co., 982 F.2d 1448 (10th Cir. 1992), the Tenth Circuit

considered whether an agreement between the parties determining employer liability under a

retirement plan should be construed under state law, or an agreement which relates to a

retirement plan and preempted by ERISA.  The court found that the plaintiff's claim did not

"disturb the administration of a pension plan, calculation of benefits, or determination of

entitlement to benefits."  Nor did Monarch's claim "affect the 'relations among the principal

ERISA entities, the employer, the plan, the plan fiduciaries, and the beneficiaries' as such." Id. at

1453, citing <u>Hospice of Metro Denver, Inc. v. Group Health Ins. of Okla., Inc.</u>, 944 F.2d 752, 756 (10th Cir. 1991). The Court in <u>Monarch</u> considered whether the claim threatened an employee's entitlement to benefits; finding it did not, the Court found no preemption. <u>Id.</u> at 1454.

Kisor relies on <u>Shea v. Esensten</u>, 208 F.3d 712 (8th Cir. 2000). In <u>Shea</u>, the deceased employee's spouse brought a state court suit against the physicians and the clinic that administered the employer's benefit plan, alleging a negligent misrepresentation claim for failure to disclose financial incentives. The Court found that Minnesota's law of negligent misrepresentation was a tort law of general application, and since it makes no reference to an ERISA plan, and the plan was peripheral to the state claim, the claim was not subject to express ERISA preemption. <u>Id.</u> at 717-18. The court then discussed seven factors to determine whether the claim had a connection with an ERISA plan. <u>Id.</u> at 718. The factors the Court considered were: (1) whether the state law negates an ERISA plan provision, (2) whether the state law affects relations between primary ERISA entities, (3) whether the state law impacts the structure of ERISA plans, (4) whether the state law impacts the administration of ERISA plans, (5) whether the state law has an economic impact on ERISA plans, (6) whether preemption of the state law is consistent with other ERISA provisions, and (7) whether the state law is an exercise of traditional state power. <u>Id.</u>

In finding that the claim did not have a connection with an ERISA plan, and was not preempted, the <u>Shea</u> Court made findings that are applicable in the case at hand. The Court found that the claim would not affect the relations between primary ERISA entities, and it "would not impact the structure, administration, or economics of any ERISA plan." <u>Id.</u> The

14

Court found that although "ERISA fiduciaries must disclose financial incentives," the defendant in the suit was not an ERISA fiduciary.  Id.

Kisor supplemented his initial briefing with a case from the Western District of Oklahoma, Fortelney v. Liberty Life Assur. Co. of Boston, -- F.Supp.2d --, 2011 WL 1938174 (W.D.Okla., May 16, 2011).  The Fortelney case is similar to the case at hand, in that a LTD beneficiary brought suit against a third-party service provider, IBI.  Id. at * 8.  Liberty referred Plaintff Carter to IBI, explaining that he was required to apply for social security benefits, and Liberty would pay for it.  Id.  Carter signed numerous forms, including Appointment of Representative and Representation Agreement.  Id.  Carter signed a document agreeing to repay any overpayment.  Id.  The Court initially found that the insurance company, Liberty, was entitled to seek reimbursement of LTD benefits after the plaintiffs were paid the lump sum back Social Security award.  Id. at *17.  The Court found that the plaintiffs' state claims against Liberty for fraud, deceit, conspiracy, breach of contract, unjust enrichment and conversion were premepted by ERISA.  Id. at *23.  The Court found that the "claims implicate the terms and administration of the LTD policy and challenge the calculation of the amount of benefits to be paid from the LTD policy."  Id.  The court further found that although the plaintiffs argued the state law claims were based on the reimbursement agreements, since the reimbursement agreements were referenced in the LTD policy, they were a part of the policy and its administration.  Id.  However, the Court reached a different decision regarding the plaintiff's claims against IBI for fraud, deceit, breach of fiduciary duty, and negligence.  The Court found that the claims "do not affect the structure, administration or type of benefits to be provided by the LTD policy.  Nor do they seek to remedy misconduct growing out of the administration of

the LTD policy.  In addition, unlike the claims against Liberty, the court concludes that ...

Carter's claims against IBI are not seeking additional benefits under the LTD policy." Id. at *26.

The claims against IBI were based on misrepresentations by IBI that they were acting in the

claimant's best interest, breach of contract based on the specific agreements signed by the

claimant, and breach of fiduciary duty and negligence based on the attorney-client relationships.

Id. at *27.  The court concluded the claims were based on "laws of general application - not

specifically targeting an ERISA plan - that involve traditional areas of state regulation and do not

affect the relations among the principal ERISA entities."  Id.

A2K relies on Ferree v. Life Insurance Company of North America, 2006 WL 2025012

(N.D.Ga., July 17, 2006).  In Ferree, plaintiff received long term disability benefits for a period

of time, the benefits terminated, and defendant attempted to recoup over $50,000.00 in

overpayments after Social Security benefits were awarded.  RSI was hired by CIGNA and LINA

to collect the overpayment, and plaintiff claimed this collection action unlawfully deprived him

of his personal property.  Plaintiff filed state law claims of negligent misrepresentation,

conversion, trespass, and punitive damages.  The Court found that if the state law claim "relates

to" an ERISA benefit plan, then ERISA preempts the claim.  Id. at *7.  The Court ruled the

proper focus was on the relationship between the conduct and the plan.  Id.  The Court found

that "Plaintiff's state law claims concern LINA's attempted enforcement of a plan provision

which allows an offset to benefits for payments received by the beneficiary from the SSA.

LINA's action arose from the administration of the plan and 'relate to' the plan."  Id. at *8.

Since the Plaintiff's claims concern the proper administration of the Plan, and reference the plan,

the Court found the claims were preempted under ERISA.  Id.

In the case at hand, Kisor brought state law claims related to violations of the Kansas Consumer Protection Act based on deceptive acts, violation of the Kansas Consumer Protection Act based on unconscionable practice, and Kansas Credit Services Organization Act violation. The Kansas Consumer Protection Act prohibits entities from engaging in unconscionable or deceptive acts and practices with consumers in the State of Kansas.  K.S.A. 50-627(a); K.S.A. 50-626(a).  In determining whether an act is unconscionable, the court can consider numerous factors, including whether the supplier took advantage of the consumer's physical or mental limitations; price gouging, a lack of material benefit from the subject of the transaction; no reasonable probability of payment by consumer; whether the transaction was excessively one-sided, whether the supplier made a misleading statement, and whether the supplier attempted to exclude or modify a warranty.  K.S.A. § 50-627(b)(1)-(7).  Deceptive acts include a large number of practices, such as misrepresenting or concealing material facts in a transaction.  K.S.A. § 50-626.  For a consumer to have a private remedy under the KCPA, the violation must have "aggrieved" the consumer.  K.S.A. § 50-634(a), (b); Finstad v. Washburn University, 252 Kan. 465, 469-70, 845 P.2d 685 (1993).  The Kansas Credit Services Organization Act addresses the activities of non-attorney credit services organizations conducting business in the State of Kansas.  K.S.A. § 50-1116.

The court notes that the four categories of state laws that "relate to" a benefit plan set out in Woodworker's are not present in the case at hand.  The KCPA and the KCSOA do not regulate benefits or terms of the ERISA plan; KCPA and KCSOA do not set requirements for plans, and KCPA and KCSOA do not provide rules for calculating the amount of benefits.  A2K argues that the law effects the administration of the plan, in that the plan provides for collection

of overpayments. A2K was hired by CIGNA to collect overpayments of an ERISA plan. A2K argues that collection of overpayments is provided for in most ERISA plans, it was provided for in this ERISA plan, and it was provided for in the contract between A2K and Kisor.

However, plan administration is described as obligations such as "determining the eligibility of claimants, calculating benefit levels, making disbursements, monitoring the availability of funds for benefit payments, and keeping appropriate records in order to comply with applicable reporting requirements." Fort Halifax Packing Co. v. Coyne, 482 U.S. 1, 9, 107 S.Ct. 221, 96 L.Ed.2d 1 (1987). A2K was not responsible for any of the administrator duties set forth in Fort Halifax. In Custer v. Sweeney, 89 F.3d 1156 (4th Cir. 1996), the Fourth Circuit found that the negligent acts of a service provider did not "relate to" the plan, as professional negligence and malpractice claims against third-party service providers to an ERISA plan do not implicate the essential functions of an employee benefit plan, such as funding, benefits, reporting, and administration. Id. at 1165-66. The Court found that Congress did not intend "ERISA to preempt state law malpractice claims involving professional services to ERISA plans," and also found that malpractice claims are traditionally an area of state authority. Id. at 1166.

The laws under which plaintiff brought suit are general applicability tort laws with no connection to ERISA, in the language of the statute or the plain meaning of the statute. KCPA and KCSOA do not effect the structure of the plan, or the type of benefits. There is no allegation in Kisor's suit that the plan benefits or terms were violated.

Even if A2K is not a fiduciary or an administrator, if the conduct of A2K "relates to" ERISA, then the state law claims are preempted. Recoupment of LTD benefits effects the

economics of the plan.  Repayment of benefits effects the viability of the plan, and the availability of benefits to other plan beneficiaries.

The strongest argument A2K advances in favor of finding that the plan relates to ERISA is that recoupment of overpayments is authorized by ERISA, and specifically, authorized by the plan in this case.  CIGNA had the right, pursuant to the plan, to seek repayment from Kisor of overpayments of disability benefits.  CIGNA hired A2K to collect the overpayment.  Kisor knew A2K had that responsibility, as evident by the correspondence between the parties.  In support of this argument, A2K cites to Ferree.  In Ferree, the court focused on the relationship between the conduct of the party in the lawsuit to the ERISA plan.  The Court found that because recoupment of benefits was provided for in the plan, the conduct constituted enforcement of the plan, and the claims were subject to preemption.

Kisor is correct in stating that this case is similar to Shea.  The state laws under which Kisor filed suit do not reference ERISA, and do not negate ERISA.  The law does not effect the relationship between ERISA primaries, the structure of ERISA, or the administration fo ERISA. However, unlike the Shea case, the actions of A2K effect the economics of the plan, as overpayment of benefits is directly related to the financial stability of the plan.

Kisor asks this court to follow the ruling of the  Fortelney Court, which made findings similar to Shea.  The Fortelney case did not discuss the economics of the plan administration, or the economic effect of overpayment to the plan.  It is unclear whether the LTD plan at issue in the Fortelney case contained a provision for reimbursement of LTD overpayments.

Kisor argues that regulation of companies that work in the state, and regulation of attorneys that practice in the state is traditionally an exercise of state power.  The KCPA was

enacted to protect the state's interest in protecting consumers against deceptive and unconscionable acts and practices. See State ex rel. Stephan v. Brotherhood Bank and Trust Co., 8 Kan.App.2d 57, 423, 649 P.2d 419 (1982). Kansas maintains standards for attorneys practicing in Kansas, and the Kansas Supreme Court has the power to prescribe conditions for admission to the bar and to define, supervise, regulate, and control the practice of law in Kansas. State ex rel. Stephan v. Williams, 246 Kan. 681, 687, 793 P.2d 234 (1990). Kisor is correct that regulation of attorneys and business in the state is traditionally a function of the state. The court first notes that representation before Social Security does not require that an attorney be licensed in that state. Further, it is not necessary that the person even be an attorney. See 20 C.F.R. § 404.1740. Secondly, in this case, Kisor is attempting to use the state law to dispute the collection of overpayment of LTD benefits. Although the state laws do not mention ERISA, and are general application laws, state law applied in this fashion effects the terms of the ERISA plan, and prevents the plan from doing what it is allowed to do, collect overpayments.

In a case from the Tenth Circuit, Hospice of Metro Denver v. Group Health Ins. of Oklahoma, Inc., 944 F.2d 752, the Court found that a state cause of action by a third party health care provider against a plan was not preempted. The Court found there was no claim of right under the plan, no breach under the plan, no enforcement of the plan, and the third party was not a beneficiary or a participant. Id. at 756. The Court considered the purpose of ERISA, "[T]o protect ... participants in employee benefit plans and their beneficiaries, by requiring the disclosure and reporting to participants and beneficiaries of financial and other information with respect thereto, by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and

20

ready access to the Federal courts." 29 U.S.C. § 1001(b). The Court found that denying a third party provider a state law action did not further the purposes of ERISA. <u>Group Health</u>, 944 F.2d at 756. The case at hand is differentiated from <u>Group Health</u> in that A2K is enforcing the plan. As stated earlier, recoupment of overpaid LTD benefits is provided for in ERISA, as well as in Kisor's plan. One purpose of ERISA is to protect all the beneficiaries of the plan, not only individual participants. Recoupment of plan overpayments effects the overall economic stability of the plan, which effects the availability of benefits to other plan participants.

c. Motion to Amend

Kisor requests the court allow him to amend his pleadings to state a claim pursuant to § 502. A2K did not address Kisor's request for amendment. "A party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice requires." Fed.R.Civ.P. 15(a)(2). Refusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith, or futility of amendment. <u>Frank v. U.S. West, Inc.</u>, 3 F.3d 1357, 1365 (10th Cir. 1993). District of Kansas Rules require that a party seeking to amend its complaint must file a motion to amend, and if necessary, a motion for leave to file. The party must also set forth a concise statement of the amendment or leave sought and attach the proposed pleading. D.Kan.R. 15.1. Kisor's request to file an amended complaint is granted. Kisor must file the request within 10 days of the date of this order. Compliance with Fed.R.Civ.P. 15 and D.Kan.R. 15.1 shall be followed.

V. <u>Conclusion</u>

IT IS THEREFORE ORDERED that Kisor's Motion to Convert the Motion for Judgment on the Pleadings into a Motion for Summary Judgment (Doc. 45) is granted.

IT IS FURTHERED ORDERED that A2K's Motion for Judgment on the Pleadings, converted to a Motion for Summary Judgment, (Doc. 34), is granted.

IT IS FURTHER ORDERED that Kisor's Motion to Strike (Doc. 51) is denied.

IT IS FURTHER ORDERED that Kisor's request to amend the pleadings is granted. This case is referred back to the Magistrate Judge for pretrial proceedings.

IT IS SO ORDERED this 30th day of June, 2011.


  s/ Wesley E. Brown_____
Wesley E. Brown
Senior United States District Court Judge