IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

EDWARD SHAWN KISOR,                    )
                                       )
                   Plaintiff,          )      **CIVIL ACTION**
                                       )
v.                                     )      No.  10-1045-MLB
                                       )
ADVANTAGE 2000 CONSULTANTS, INC.,      )
                                       )
                   Defendant.          )
_____)

## MEMORANDUM AND ORDER

ERISA protects beneficiaries, in part by imposing certain duties on fiduciaries and third parties.  Fiduciaries have a responsibility to disclose material information to participants and beneficiaries. A violation of this duty may entitle participants to equitable relief. Contrary to Plaintiff's claims, the contingency fee agreement, the alleged conflict of interest, and the status of Plaintiff's back social security award are not material information.  Therefore, Plaintiff is not entitled to relief and Defendant's Motion for Summary Judgment (Doc. 67) is granted.

I.  Facts

Plaintiff was an employee of Exide Technologies from 2001 through 2007.  He purchased Long Term Disability ("LTD") insurance from CIGNA through their group LTD insurance contract.  The plan administrator was Exide and the plan fiduciary was CIGNA.  In 2002, CIGNA entered into a contract with Advantage 2000 Consultants ("A2K"), wherein Defendant agreed to provide Social Security representative services to people insured by CIGNA Long Term Disability (LTD) insurance policies.  The contract, as amended in 2004, states that

Defendant will provide "Vendor Coordinated Overpayment Reduction Services" (COR) to CIGNA:

> [A2K] will provide quality assistance in arranging for the re-payment of any incurred overpayment for Company's [LTD] claimants who may be eligible for Social Security Disability Income (SSDI) Benefits. [A2K] will educate Company's LTD claimants about the overpayment recovery process, arrange for an electronic repayment transaction, monitor SSDI benefits awards, notify Company of any such benefits received by the claimant, inform the claimant of any overpayment to be repaid to Company, and execute the electronic transaction to refund the overpayment from the claimant to Company.

CIGNA pays Defendant a flat fee for its social security representation services and a contingency fee equal to a percentage of the actual dollar amount of the Social Security back award. The percentage amount is not disclosed by CIGNA or Defendant to the LTD clients.

Plaintiff suffered a work injury in August, 2006, and applied for LTD benefits under the Policy. CIGNA encouraged Plaintiff to use Defendant to apply for SSDI benefits. Plaintiff was informed that if he did not apply for SSDI benefits his LTD payments would be reduced by the estimated amount of SSDI. On the other hand, if Plaintiff chose to apply for SSDI benefits, he could also choose to have CIGNA pay full LTD benefits without the estimated social security payment deducted. This would result in an overpayment by CIGNA and Plaintiff was informed that he would be obligated to pay back any overpaid LTD benefits. Plaintiff also was informed that Defendant, if it assisted him in applying for SSDI, would coordinate the recovery process. Although Plaintiff initially refused to apply for benefits through Defendant, he eventually employed Defendant to assist him in applying for and receiving SSDI benefits and he signed the reimbursement

-2-

agreement.  Defendant sent Plaintiff numerous documents, including a medical release form, electronic funds transfer debit authorization, a document answering frequently asked questions, and many letters and correspondence relating to representation and repayment of overpaid benefits to CIGNA.

Plaintiff was informed that CIGNA would pay Defendant's fee for SSDI representation, with no cost to Plaintiff.  Plaintiff was awarded SSDI benefits on January 22, 2009, from February 2007 forward.  After Plaintiff received the back award, Defendant asked Plaintiff on numerous occasions to sign the check over to CIGNA to reimburse LTD overpayments.  Plaintiff refused to do so, instead cashing the check and paying outstanding bills.

II.  Standard

The usual and primary purpose of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses. See Celotex Corp. V. Catrett, 477 U.S. 317, 323-24 (1986).  Federal Rule of Civil Procedure 56(c) directs the entry of summary judgment in favor of a party who "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  An issue is "genuine" if sufficient evidence exists on each side "so that a rational trier of fact could resolve the issue either way" and "[a]n issue is 'material' if under the substantive law it is essential to the proper disposition of the claim."  Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670 (10th Cir. 1998)(citations omitted); see also Adams v. Am. Guarantee & Liab. Ins. Co., 233 F.3d 1242, 1246 (10th Cir. 2000)(citing Adler).  The mere existence of some factual dispute will not defeat an otherwise

properly supported motion for summary judgment because the factual dispute must be material. *See* <u>Renfro v. City of Emporia</u>, 948 F.2d 1529, 1533 (10th Cir. 1991).

A defendant initially must show both an absence of a genuine issue of material fact and entitlement to a judgment as a matter of law. *See* <u>Adler</u>, 144 F.3d at 670. Because a plaintiff bears the burden of proof at trial, a defendant need not "support [its] motion with affidavits or other similar materials *negating* [a plaintiff's]" claims or defenses. <u>Celotex</u>, 477 U.S. at 323 (emphasis in original). Rather, a defendant can satisfy its obligation simply by pointing out the absence of evidence on an essential element of a plaintiff's claim. *See* <u>Adler</u>, 144 F.3d at 671 (citing <u>Celotex</u>, 477 U.S. at 325).

If the defendant properly supports its motion, the burden then shifts to the plaintiff, who may not rest upon the mere allegation or denials of its pleading, but must set forth specific facts showing that there is a genuine issue for trial. *See* <u>Mitchell v. City of Moore, Okla.</u>, 218 F.3d 1190, 1197-98 (10th Cir. 2000). In setting forward these specific facts, the plaintiff must identify the facts "by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." <u>Adler</u>, 144 F.3d at 671. If the evidence offered in opposition to summary judgment is merely colorable or is not significantly probative, summary judgment may be granted. *See* <u>Cone v. Longmont United Hosp. Ass'n</u>, 14 F.3d 526, 533 (10th Cir. 1994). A plaintiff "cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial." <u>Conaway v. Smith</u>, 853 F.2d 789, 793 (10th Cir. 1988). Put simply, the plaintiff

must "do more than simply show there is some metaphysical doubt as to the material facts." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87 (1986).

In the end, when confronted with a fully briefed motion for summary judgment, the court must determine "whether there is the need for a trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250 (1986).  If sufficient evidence exists on which a trier of fact could reasonably find for the plaintiff, summary judgment is inappropriate.  *See* <u>Prenalta Corp. v. Colo. Interstate Gas Co.</u>, 944 F.2d 677, 684 (10th Cir. 1991).

III. <u>Discussion</u>

The basis for the suit is Plaintiff's contention that Defendant never disclosed significant material information, including:

1. Defendant had a conflict of interest with Plaintiff.

2. Defendant would receive a contingency fee from CIGNA for recovering the overpayment from Plaintiff.

3. Plaintiff's Social Security back award was protected from garnishment, execution, or other legal process under federal law.

Plaintiff requests an injunction enjoining Defendant from withholding material information from its clients.  He also seeks to bring the case as a class action.

Defendant requests summary judgment arguing that the disclosures were not material to decisions regarding employee benefits.  Defendant asserts that because the information is not relevant, Plaintiff has not stated a claim under ERISA.

-5-

Plaintiff filed this claim against Defendant, a third party non-fiduciary, not against CIGNA, the plan fiduciary. Defendant argues that Plaintiff has not alleged any conduct on the part of Defendant relating to management or administration of the plan. However, Defendant does admit that the Supreme Court held that § 1132(a)(3) imposes certain ERISA duties on all parties, including non-fiduciaries. Harris Trust & Savings Bank v. Salomon Smith Barney, Inc., 530 U.S. 238, 246, 120 S.Ct. 2180 (2000). Defendant asserts there is a split in the circuits whether Harris Trust authorizes equitable actions against non-fiduciaries charged with participating in a breach of fiduciary duty. Defendant does not believe this Court needs to address this issue, since Plaintiff has failed to show that CIGNA violated a fiduciary duty and Plaintiff has failed to state a claim.

Plaintiff agrees that Defendant is not a fiduciary, but replies that § 503(a)(3) authorizes injunctive relief against non-fiduciaries who knowingly participate in a breach of fiduciary duty. Plaintiff argues that since CIGNA failed to disclose material information and Defendant also failed to disclose the material information, then the parties together breached ERISA.

The Court agrees with the parties that non-fiduciaries may be subject to ERISA duties. However, as discussed below, because Plaintiff has failed to show that CIGNA violated a fiduciary duty, the Court need not decide whether Plaintiff can proceed with an equitable action against Defendant.

Congress designed ERISA "to promote the interests of employees and their beneficiaries in employee benefits plans." Ingersoll-Rand

-6-

<u>Co. V. McClendon</u>, 498 U.S. 133, 137, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990)(internal quotations and citation omitted).  ERISA § 502(a)(3) provides:

> A civil action may be brought ... by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of (Title 1 Of ERISA) or the terms of the plan, or (B) to obtain other appropriate equitable relief (I) to redress such violations or (ii) to enforce any provisions of (Title 1 of ERISA) or the terms of the plan.

29 U.S.C. § 1132(a)(3).  Only equitable relief is available under § 502(a)(3).  <u>Mertens v. Hewitt Assoc.</u>, 508 U.S. 248, 262, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993).  For the relief requested by Plaintiff, there must be a showing of harm, although a showing of detrimental reliance is not required.  29 U.S.C. § 1022; <u>Tomlinson v. El Paso Corp.</u>, 653 f.3d 1281, 1295 (10th Cir. 2011), citing <u>CIGNA Corp. V. Amara</u>, 131 S.Ct. 1866, 1881, 179 L.Ed.2d 843 (2011).

An ERISA fiduciary has a duty to act "solely in the interest of the participants and beneficiaries" for purposes of providing benefits and administering the plan.  29 U.S.C. § 1104(a)(1)(A).  Since Congress did not enumerate all the powers and duties for fiduciaries when enacting ERISA, the common law of trust supplements the general scope of authority and responsibilities of fiduciaries.  <u>Ershick v. United Mo. Bank of Kan. City, N.A.</u>, 948 F.2d 660, 666 (10th Cir. 1991).  "A fiduciary has a legal duty to disclose to the beneficiary only those material facts, known to the fiduciary but unknown to the beneficiary, which the beneficiary must know for its own protections."  <u>Glaziers & Glassworkers Union Local No. 252 Annuity Fund v. Newbridge Secs., Inc.</u>, 93 F.3d 1171, 1182 (3rd Cir. 1996).  "A fiduciary's misrepresentation or failure to disclose is material 'if there is a

substantial likelihood that it would mislead a reasonable employee in making an adequately informed ... decision.'" Horn v. Cendant Operations, Inc., 69 Fed. Appx. 421, 428 (10th Cir. 2003), citing Jordan v. Fed. Express Corp., 116 F.3d 1005, 1015 (3rd Cir. 1997). "ERISA's duty of loyalty may require a fiduciary to disclose latent conflicts of interest which affect participants' ability to make informed decisions about their benefits." Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 600 (8th Cir. 2009).

The Court must determine whether the failure to disclose the reimbursement agreement, the protected status of the SSDI award, or the alleged conflict of interest qualifies as a material failure to disclose.  Courts have considered many different factors and factual scenarios in deciding whether a failure to disclose was material.

A number of cases have looked at the duty to disclose physician incentives.  In Horvath v. Keystone Health Plan East, Inc., 333 F.3d 450 (3rd Cir. 2003), the Court considered whether the HMO had a fiduciary duty to disclose the details of physician incentives.  The Court found there was no duty to disclose "physician incentives absent a request for such information" by the member, without facts that put the fiduciary on notice that the member "needed such information to prevent her from making a harmful decision with respect to her healthcare coverage," and absent evidence that the member "was harmed as a result of not having such information disclosed to her."  Id. at 463.

In another physician incentive case the Court held that the "text, structure and legislative history of ERISA do not support the imposition of a broad duty to disclose physician compensation plans."

-8-

<u>Ehlmann v. Kaiser Foundation Health Plan of Texas</u>, 198 F.3d 552, 556 (5th Cir. 2000).  The Court found that although the common law of trusts applied to Section 404, ERISA's fiduciary standards did not set forth specific disclosure requirements, and the Court was not going to establish a disclosure requirement not enumerated in the statute.

Plaintiff relies on <u>Shea v. Esensten</u>, 107 F.3d 625 (8th Cir. 1997), in which the Court ruled that the fiduciary's failure to disclose the compensation arrangement was a violation of a duty of loyalty.  In <u>Shea</u>, the plaintiff filed suit against the HMO that administered the plan, alleging that the failure to disclose the practice of giving primary-care physicians financial incentives to minimize referrals to specialists caused her husband's death.  The court ruled that the fiduciary's duty of loyalty required disclosure of the compensation arrangement:

> From the patient's point of view, a financial incentive scheme put in place to influence a treating doctor's referral practices when the patient needs specialized care is certainly a material piece of information.  This kind of patient necessarily relies on the doctor's advice about treatment options, and the patient must know whether the advice is influenced by self serving financial considerations created by the health insurance provider.  The district court believed Seagate's employees already realized their doctor's pocketbooks would be adversely affected by making referrals to outside specialists.  Even if the district court is right, Seagate's employees still would not have known their doctors were penalized for making too many referrals and could earn a bonus by skimping on specialized care.  Thus, we conclude Mr. Shea had the right to know Medica was offering financial incentives that could have colored his doctor's medical judgment about the urgency for a cardiac referral.  Health care decisions involve matters of life and death, and an ERISA fiduciary has a duty to speak out if it 'knows that silence might be harmful.'  Indeed, in this case the danger to the plan participant's well being was created by the fiduciary itself.  If Mr. Shea had been aware of his doctor's financial stakes, he could have made a fully

> informed decision about whether to trust his doctor's recommendation that a cardiologist's examination was unnecessary.

Id. at 628-629, quoting Bixler v. Central Penn Teamsters Health & Welfare Fund, 12 F.3d 1292, 1300 (3rd Cir. 1993). The Court went on to state that "[W]hen an HMO's financial incentives discourage a treating doctor from providing essential health care referrals for conditions covered under the plan benefit structure, the incentives must be disclosed and the failure to do so is a breach of ERISA's fiduciary duties." Id. at 629.

Plaintiff's reliance on the result of Shea is completely misplaced. The language of the opinion shows that the Court was concerned with the influence of the physician incentives on the plan and, perhaps most important, the ability of the participant to make an informed decision regarding healthcare. ("influence a treating doctor's referral practices," "whether the advice is influenced," "colored his doctor's medical judgment," "silence might be harmful," "danger to the participant," "relies on advice," "fully informed decision," "trust doctor.") None of these concerns are pertinent in this case. Plaintiff has not alleged that the reimbursement agreement between CIGNA and Defendant influenced the plan or the operation or effect of the plan. Plaintiff also has not alleged that the reimbursement agreement affected his ability to receive the benefits of the plan. On the contrary, the evidence is that Plaintiff received all the benefits to which he was entitled. Plaintiff avers that he never would have "signed the forms" in connection with Defendant's representation had he been aware of the information which he claims

-10-

should have been disclosed, but was not.  But Plaintiff does not explain why he would not have signed or what he would have done had he been aware of the information.  Plaintiff only alleges that beneficiaries have a right to know how the Defendant is paid, a right to know representation details, and a right to know the protected status of the award.

Courts also have considered the interests of the beneficiaries when deciding if disclosure is required.  In a case in which the plan participants alleged a breach of fiduciary duty in failing to disclose material information about Enron's true financial condition to the investing fiduciaries, the Court found a violation of an ERISA duty. In re Enron Corp. Securities, Derivative & ERISA Litigation, 284 F.Supp.2d 511 (S.D. Tex. 2003).  The Court noted the Fifth Circuit recognized an affirmative duty to disclose by a fiduciary in special circumstances which would result in a "potentially extreme impact on a plan as a whole, where plan participants generally could be materially and negatively affected." Id. at 559 (internal quotations removed).  The Court found that "disclosure was essential to protect the interests (retirement assets) of plan participants and beneficiaries from the threat of substantial depletion." Specific to Enron was the fact that the fiduciaries were selling large amounts of their Enron holdings while failing to disclose information about Enron's dangerous financial condition.  Id. at 562.  No such situation is alleged in this case.

Similarly, the plan administrator has a fiduciary duty to act prudently and in the best interest of the participants which requires disclosure of pension options to a participant with terminal cancer.

<u>Anderson v. Board of Trustees of Northwest Ohio United Food and</u>
<u>Commercial Workers Union and Employer</u>, 567 F.Supp.2d 991 (N.D. Ohio
2008). The Court focused on whether the plan's actions were in the
best interest of the participant, and the duty of the plan to inform
the participant so he may act in his best interest. <u>Id.</u> at 1004.

There are a number of cases that consider whether undisclosed
material is pertinent to the plan. In <u>Ames v. American National Can</u>
<u>Co.</u>, 170 F.3d 751 (7th Cir. 1999), the Court concluded that plaintiff
had no right to learn the names of the individual fiduciaries because
that list was not a document under which the plan was managed.
Because the information requested was not pertinent to the operation
of the plan, the plan was not required to disclose it. <u>Id.</u> at 759.

In another case, the Court noted that Congress used intentional
language limiting disclosure to "formal or legal documents under which
a plan is set up or managed." <u>Faircloth v. Lundy Packing Co.</u>, 91 F.3d
648, 654 (4th Cir. 1996). The Court relied on 28 U.S.C. § 1024:

> The administrator shall, upon written request of any
> participant or beneficiary, furnish a copy of the latest
> updated summary, plan description, and the latest annual
> report, any terminal report, the bargaining agreement,
> trust agreement, contract, or other instruments under
> which the plan is established or operated. The
> administrator may make a reasonable charge to cover the
> cost of furnishing such complete copies. The Secretary
> may by regulation prescribe the maximum amount which will
> constitute a reasonable charge under the preceding
> sentence.

28 U.S.C. § 1024(b)(4). The Court ruled § 1024 should not be read
broadly, and that Congress intended § 1024 to limit the required
disclosures. <u>Faircloth</u> at 654. The Court also discussed §
404(a)(1)(A), and found that it did not require plan fiduciaries to
furnish documents to participants and beneficiaries beyond what §

-12-

104(b)(4) required of plan administrators.  Id. at 657.

Finally, in Anweiler v. American Elec. Power Service Corp., 3 F.3d 986 (7th Cir. 1993), the Court found the fiduciary breached a duty by not giving full and complete material information concerning a reimbursement agreement.  The Court recognized that although reimbursement agreements are typically upheld, the deceased was not told that the reimbursement agreement was revocable, which was material information.  Id. at 991.  The Court ruled that Aetna "may have manipulated its position as insurer of the disability plan and life insurance policy to its own benefit rather than Mr. Anweiler's when it provided for reimbursement of one policy by way of another."  Id. at 992.  However, the Court found that plaintiff was not entitled to equitable relief because the plaintiff did not come with clean hands.

These cases are helpful in evaluating Plaintiff's claim that Defendant and CIGNA breached a fiduciary duty by not disclosing material information.  Plaintiff does not allege that he requested information on Defendant's fee agreement with CIGNA, even though he was told in a February 15, 2007 letter that CIGNA would pay Defendant's fees.  Nor did Plaintiff request potential conflict of interest documentation, or the legal status of the social security back award, even though this information, at least in part, was provided to Plaintiff initially by Defendant.  Plaintiff has not shown that this information was needed to prevent him from making a harmful decision.  On the contrary, Plaintiff has failed to show that the information is essential to protect Plaintiff's or any other participant's interest.  Plaintiff received the benefit of the plan –

-13-

long term disability benefits and payments.  There was no manipulation by either CIGNA or Defendant for their own benefit and the silence was not misleading.

Finally, Plaintiff has not shown that the information was pertinent to the plan.  The plan did not operate under the payment agreement, nor was the relationship between CIGNA and Defendant pertinent to the plan, the administration of the plan, or the operation of the plan.  Plaintiff has not alleged that CIGNA or Defendant manipulated their respective positions by not disclosing the agreement.  Even if Plaintiff had requested the information, without a showing that the plan operated or was administered under the documents or information requested, Plaintiff would not have a right to them.

Plaintiff has not pointed to one piece of evidence in the record that failure to disclose the fee arrangement, the status of the award, or the alleged conflict of interest misled Plaintiff into making an uninformed decision about his plan benefits.  Indeed, Plaintiff's benefits were not affected and Plaintiff received the full benefit of long term disability insurance.  CIGNA and Defendant complied with the plan's lawful terms and provided Plaintiff the benefits due under the plan.[1]

---

[1]  Plaintiff's counsel has initiated an ethics complaint in Missouri against an attorney hired by Defendant (or perhaps an in-house attorney employed by Defendant, the Court cannot tell which) to assist Plaintiff in making his Social Security disability claim.  The ethics complaint is supported by the opinion of a Kansas lawyer who handles Social Security cases.  Essentially, the claim is that Defendant's attorney who helped Plaintiff committed ethical violations by not disclosing the contingent fee agreement, etc.  Plaintiff's counsel asserts that the "investigation" of the complaint has been "deferred until the disposition of this case."  The Court assumes that

IV. <u>Conclusion</u>

For the reasons stated herein, Defendant's Motion for Summary Judgment (Doc. 67) is granted. The clerk will enter judgment for the Defendant.

Plaintiff filed the Third Amended Complaint as a Class Action. Because Plaintiff has failed to show that he is entitled to relief, Plaintiff's request for class action status is denied. The Court seriously doubts that there are few, if any, persons insured by CIGNA LTD policies who would want to be part of a class action which involves the claims made by Plaintiff.

A motion for reconsideration of this order pursuant to this court's Rule 7.3 is not encouraged. The standards governing motions to reconsider are well established. A motion to reconsider is appropriate where the court has obviously misapprehended a party's position or the facts or applicable law, or where the party produces new evidence that could not have been obtained through the exercise of reasonable diligence. Revisiting the issues already addressed is not the purpose of a motion to reconsider and advancing new arguments or supporting facts which were otherwise available for presentation when the original motion was briefed or argued is inappropriate. <u>Comeau v. Rupp</u>, 810 F.Supp. 1172 (D.Kan. 1992). Any such motion shall not exceed three pages and shall strictly comply with the standards enunciated by this court in <u>Comeau</u>. The response to any motion for

---

this Memorandum and Order will receive appropriate consideration by those responsible for evaluating ethics complaints in Missouri. Although not conclusive on the outcome of the ethics complaint, the Court views Plaintiff's counsel's decision to file the complaint to be most unfortunate.

reconsideration shall not exceed three pages.  No reply shall be filed.

    IT IS SO ORDERED.

    Dated this 6th day of July 2012, at Wichita, Kansas.


                                    s/ Monti Belot
                                Monti L. Belot
                                UNITED STATES DISTRICT JUDGE